148 So.2d 782 (1963)
CITY OF NEW ORLEANS and Audubon Park Commission
v.
BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS.
No. 769.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 1962.
Rehearing Denied February 4, 1963.
*783 Chaffe, McCall, Phillips, Burke, Toler & Hopkins, Leon Sarpy, Peter A. Feringa, Jr., Charles I. Denechaud, Jr., Felix W. Gaudin, New Orleans, and Alvin J. Liska, City Atty. (Charles E. Cabibi, New Orleans, of counsel), for plaintiffs-appellants.
Sumter D. Marks, Jr., Charles M. Lanier, Emero S. Stiegman, New Orleans (Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, of counsel), for defendant-appellee.
Before McBRIDE, REGAN, YARRUT, SAMUEL and JOHNSON, JJ.
*784 SAMUEL, Judge.
This suit seeks to enjoin the defendant from taking and occupying part of the bank of the Mississippi River fronting on Audubon Park in the City of New Orleans. After a trial on the rule nisi for a preliminary injunction and on the merits the District Court denied the injunction and dismissed the suit. Petitioners have suspensively appealed.
The litigation arose after defendant announced its intent to construct an upstream extension of its Nashville Avenue Wharf and commenced soil borings to ascertain subsurface conditions. The proposed extension would occupy all of the bank of the Mississippi River fronting on Audubon Park. The park occupies a large tract of land part of which was acquired from private owners in the year 1871 and part of which, lying immediately downstream and known as the "Mengel Tract", was acquired years later from a railroad company. It is only the taking and use of the river bank fronting on the parcel of land acquired in 1871 which is sought to be enjoined by this suit. The use of the river bank fronting on the Mengel Tract is not attacked.
The record contains two volumes of testimony and over a hundred exhibits. Eight original, supplemental and reply briefs have been filed and several issues have been raised. However, our conclusion on one of those issues makes it necessary and proper for us to consider only that one.
The defendant is an agency of the State of Louisiana, created by Act 70 of 1896 (LSA-R.S. 34:1 et seq.), with authority generally to regulate, maintain and develop the commerce and traffic of the port and harbor of New Orleans and to acquire, by expropriation or by purchase, property, wharves or landings necessary for the benefit of the commerce of the port. Its claim to the river bank property here involved is based solely upon the contention that as agent of the state it has the right to exercise the servitude of use for purposes of commerce and navigation imposed by LSA-Civil Code Art. 665. No other authority is urged or relied upon by the defendant for its taking and use of the property.
LSA-Civil Code Art. 665 reads:
"Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
"All that relates to this kind of servitude is determined by laws or particular regulations." LSA-C.C. Art. 665.
The tract of land in question was acquired in 1871 by purchase from private owners, title being taken in the name of "The Commissioners of the New Orleans Park", a board created by the legislature by Act 84 of the Extra Session of 1870 for the purpose of managing and controlling the New Orleans Park (now known as City Park). The authority of this board was expanded by Act 83 of 1871, which conferred upon the board the right to manage for park purposes additional lands to be selected by a special committee appointed by the legislature. The land selected by the special committee is the land described in the 1871 acquisition and involved in this suit. Act 87 of 1877 transferred all the powers and duties conferred on the park commissioners by Act 84 of the Extra Session of 1870 and the amendment of 1871 to the City Council of New Orleans. Act 130 of 1896 placed Audubon Park under the control and management of a corporation known as the "Audubon Park Association". The next act on the subject, 191 of 1914, created an Audubon Park Commission for the City of New Orleans composed of 24 citizens and property tax payers to be appointed by the Mayor with the advice and consent of the City Council and vested control and management of Audubon Park in the commission it created. Additional *785 authority relative to park recreational and entertainment facilities and activities was given the commission by Act 492 of 1958.
Defendant contends we must hold that Audubon Park is owned by the city which acts through its own agent, the Audubon Park Commission, (1st) because plaintiffs are bound by an allegation in their petition to the effect that the two plaintiffs "are vested with the ownership, control and management" of the park property and cannot now assert ownership in the state, and (2nd) as a result of the fact that the case of State Civil Service Comm. v. Audubon Park Comm., La.App., 99 So. 2d 920, holds that Audubon Park is owned by the city.
Even though the petition does allege ownership as above set forth it does not follow from such an allegation that we must hold ownership is in the city or that petitioners are estopped from now asserting ownership in the state. In addition to the fact that the circumstances here are quite different from a case involving the private property of a private litigant, and while a litigant may be estopped or bound by allegations of fact, he is not bound by allegations which are only pronouncements or conclusions of law or based upon an error in fact. Scurria v. Russo, La.App., 134 So.2d 679; Modicut v. Rist, La.App., 98 So.2d 268; Southern United Ice Co. v. Rapides Grocery Co., La.App., 187 So. 313; Central Sav. Bank & Trust Co. v. Succession of Brandon, La.App., 167 So. 515. The allegation here is not binding on the pleaders or the court.
The case of State Civil Service Comm. v. Audubon Park Comm., supra, decided by this court in 1958, was a mandamus proceeding brought by the State Civil Service Commission of Louisiana to compel the Audubon Park Commission to comply with the regulations and rules of the State Civil Service Commission rather than with those of the City Civil Service Commission of the City of New Orleans with which they had been complying. This court held that the Audubon Park Commission is an independent agency of the City of New Orleans and not of the State of Louisiana. The decision was concerned only with civil service and not at all with ownership of the park and is not apposite. The holding that individuals who work for an agent which manages and controls property work for the agent rather than for the owner of the property is not inconsistent with or repugnant to the views expressed in the instant case.
We are of the opinion that the above recited legislative acts do nothing more than designate successive agencies to administer, manage and control the park property which belonged, and belongs, to the state. Although title to the property was originally taken in the name of the legislative corporation which had authority to manage and control the park, it is quite clear that the state, and not the corporation, owned the property, and this is also true in connection with the later designations of other agencies. None of the legislative acts divests the state of its original ownership nor has the defendant called to our attention any other act or action by the state which could be considered such a divestiture. None of the agencies owns or has ever owned the property; that ownership has remained in the state. As the court observed in the case of Saucier v. City of New Orleans, 119 La. 179, 187, 43 So. 999, 1002:
"That the state must administer its property through some agent, that it may administer such of its property as lies within a particular municipality through such municipality, and that the investiture of a municipality with control of state property, for purposes of administration, is neither the loaning, pledging, nor granting of anything, are propositions which do not admit of discussion."
Thus the property which defendant contends is subject to the servitude and the *786 servitude itself are both part of the public domain of Louisiana and are both owned by the State of Louisiana.
Under LSA-Civil Code Art. 646 the servitude with which we are here concerned is a real servitude defined as follows: "Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate." The following Civil Code articles are pertinent:
"A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner." LSA-C.C. Art. 647.
"From the definition contained in the preceding article, it follows that to establish a predial or real servitude there must first be two different estates, one of which owes the servitude to the other.
"If then a stipulation be made of a servitude in favor of a person, and not in favor of an estate, the obligation will not be null on that account, but it will not create a real servitude." LSA-C.C. Art. 648.
"It is necessary, in the second place, that these two estates belong to two different persons, for if they are both the property of one person the application which the owner makes of one to the advantage of the other is not called a servitude, but a disposition of the owner, which will be explained hereafter." LSA-C.C. Art. 649.
These articles appear in the code under the same title, "Of Predial Servitudes or Servitudes of Land", as does Art. 665 and they expressly provide that where the estates do not belong to two different persons there can be no servitude and where the two estates are the property of one person the application which the owner makes of one to the advantage of the other is not a servitude but a "disposition of the owner". As we have already mentioned, except for the contention relative to LSA-Civil Code Art. 665, defendant has not called our attention to any "disposition" by the state which would give defendant the right to take and use the land in question and we know of none. That there is no servitude where there is but one owner would appear to be obvious even in the absence of the quoted articles because of the fact that ownership necessarily would include all of the rights which could be derived from a servitude. There is, of course, no suggestion in this case that a servitude has been established by the owner of adjoining estates as provided by LSA-C.C. Art. 767.
The predial servitude is extinguished by confusion when the two estates come under the same ownership. LSA-Civil Code Art. 805, which also appears under the same title as the other quoted articles provides:
"Every servitude is extinguished, when the estate to which it is due, and the estate owing it, are united in the same hands.
"But it is necessary that the whole of the two estates should belong to the same owner; for if the owner of one estate only acquires the other [in] part or in common with another person, confusion does not take effect." LSA-C.C. Art. 805.
We conclude that because there is only one owner involved, i. e., the state, the subject property is not burdened by the predial servitude of LSA-Civil Code Art. 665, that servitude having been extinguished by confusion when the state acquired ownership of the park property. We do not hold, nor do we suggest, that state property which is transferred to private or any ownership other than that of the state is not then burdened by the servitude here involved. See 36 Tul.L.Rev. 521. We only hold that property owned by the state is not burdened by that servitude while so owned.
*787 For the reasons assigned, the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment in favor of the petitioners and against the defendant in accordance with petitioners' prayer for a permanent injunction. It is further ordered that this case be remanded to the trial court with instructions to the judge of that court to issue an injunction against the defendant and its members and officers permanently enjoining, restraining and prohibiting them and each of them, their agents, servants and employees from in any manner interfering with or preventing petitioners from exercising their rights to the development of that portion of Audubon Park, New Orleans, which is involved in this suit, and further from erecting or constructing and from attempting to erect and construct any wharves, docks, sheds or other installations on the said area, in accordance with law.
Reversed and remanded.
YARRUT, Judge (concurring).
I agree fully with the facts as recited in the majority opinion and the conclusion reached.
Specifically, the Board of Commissioners for the Port of New Orleans, referred to as the Dock Board, claims a servitude on that portion of the property forming the bank of the Mississippi River, entrusted to the other governmental agency, the Audubon Park Commission, referred to as Park Commission. The Dock Board is invested with administrative authority to regulate commerce and to build docks and wharves in the Port of New Orleans, with power of eminent domain. LSA-Const.1921, Art. 6, § 16; Art. 6, § 16.4; and LSA-R.S. 34:21, 23, 27, 44. The Park Commission is invested with administrative authority over Audubon Park in New Orleans, which extends to the Mississippi River, in upper New Orleans. The only basis for this contention is the Civil Code Articles discussed herein.
LSA-C.C. Arts. 664 and 665 deal with legal servitudes imposed for the public or common utility and relate to the space reserved for public use of lands of adjacent proprietors on the shores of navigable waters, for making and repairing of levees, roads and other common works; all of which is determined by laws and particular regulations. These Articles deal with public servitudes on private lands.
One governmental agency has no paramount or dominant right over property entrusted to another governmental agency, neither servitude nor expropriation, unless such right is expressly granted or necessarily implied by constitutional or legislative grant; any servitude reserved for the public upon private property not being attributable to property specifically dedicated to other public purpose.
In State Through Dept. of Highways v. Ouachita Parish School Board, 242 La. 682, 138 So.2d 109, at p. 112, the Supreme Court held:
"In determining whether property already devoted to a public use can be subjected to expropriation, the factor to be considered is the character of the condemnor. If the sovereign on its own behalf seeks to acquire such property by eminent domain, the fact that the land sought to be taken is public property generally is immaterial. * * * If, on the other hand, the sovereign has delegated the power of expropriation to one of its subdivisions or agencies, the rule is that the agency or department cannot expropriate property already devoted to a public use unless the Legislature has authorized it to acquire public property expressly or by necessary implication. Nichols, op. cit. supra, [Law of Eminent Domain] sec. 2.2, p. 132; Jahr, op. cit. supra, [Law of Eminent Domain] sec. 20, p. 37; Railway Co. v. Vicksburg, S. & P. Railroad Co., 49 La.Ann. 29, 21 So. 144; Borough of Barnegat Light v. Board of Chosen *788 Freeholders of Ocean County, 44 N.J. Super. 332, 130 A.2d 409; see Canzonetti v. City of New Britain, 147 Conn. 478, 162 A.2d 695."
The Court then quoted from a case cited in Corpus Juris Secundum, viz.:
"The lands are also devoted to a public use, and lands so devoted we think additionally are not subject to condemnation under general powers to that end, but must specifically by the Legislature itself made subject to such proceedings. Lands so held are usually possessed by the corporations, municipal or private, having also general power of condemnation. To subject such lands to taking by one corporation from another under the general powers of condemnation would be to open the door to recriminatory condemnation litigation without end inasmuch as, if under such authority the first taking would be justified, its retaking would be equally within the power of the adverse party. * * * Property once devoted to a public use cannot be diverted therefrom without express authority of the Legislature." Village of Ridgewood v. Borough of Glen Rock, 15 N.J. Misc. 65, 188 A. 698, 699, as quoted in State, Through Dept. of Highways v. Ouachita Parish School Board supra.
Servitudes which affect the free use of property are always interpreted in favor of the property sought to be affected in case of doubt as to their extent or manner of use. LSA-C.C. Art. 753.
The servitude claimed by the Dock Board to build wharves and docks over which it will have complete dominion and control, is equivalent to appropriation.
In view of the lack of clear constitutional or statutory authority, or necessary implication, giving the Dock Board such paramount right, the Dock Board has no such right at this time. Whether the shore of Audubon Park is needed more for the trade and commerce of the City, than for public recreation, is for the Legislature, not the Courts, to decide.
McBRIDE, J., joins in the concurrence of YARRUT, J.