421 So.2d 282 (1982)
The CITY OF NEW ORLEANS, Honorable Ernest N. Morial, Mayor of the City of New Orleans and Gail Broussard, Jerome S. Glazer, Dr. Robert Azar, Stephen Manshel and Peter Coleman, all Commissioners of the Audubon Park Commission and
Intervenors, Mitch Ledet, Joe Knecht, Brendolyn McKenna, Phil Baptiste, George Ethel Warren, Edgar Poree, Alice Mayer Katz, and Felicia Kahn
v.
Honorable David C. TREEN, Governor of the State of Louisiana and Mrs. Lawrence H. Fox, Secretary of Department of Culture, Recreation and Tourism and
Intervenors, Friends of the Zoo, Inc., Mrs. Brooke H. Duncan, Mrs. James K. Wadick, III, Mr. Julian B. Feibelman, Jr., Ms. Elizabeth Wisdom, Mrs. George Cary, Jr., Mr. Harry B. Kelleher, Jr., Mrs. Lane T. DeBardeleben, Mr. Louis L. Frierson, Mrs. Daniel H. Walsh, Dr. David F. Bradley, Mr. J. Freyhan Odenheimer and Mrs. Hughes P. Walmsley.
Nos. C-0139, CA-0154.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1982.
*283 Salvador Anzelmo, City Atty., Galen S. Brown, Jack P. McNeely and T.W. Milliner, Asst. City Attys., New Orleans, for City of New Orleans, et al.
Warren Goldstein, New Orleans, for Mitch Ledet, et al.
Phillip A. Wittmann, Judy Y. Barrasso, Steven W. Usdin, of Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for Jerome S. Glazer.
Henry W. Kinney, III, New Orleans, for Friends of the Zoo, Inc., et al.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Louis M. Jones, Asst. Atty. Gen., Maureen J. Feran, Staff Atty., Gunther R. Michaelis, Asst. Atty. Gen., La. Dept. of Justice, New Orleans, for defendants-respondents; John J. Hainkel, Jr., New Orleans, David R. Poynter, Baton Rouge, of counsel.
Harry B. Kelleher, William R. Forrester, Jr., W.L. West of Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for Bd. of Liquidation, City Debt, of the City of New Orleans, intervenor-appellant.
WILLIAMS, Judge.
Appellants have appealed from a decision of the Civil District Court denying plaintiff's request for a preliminary injunction enjoining implementation of Act 352 of 1982 on the ground that it is unconstitutional.
Act 352 of the 1982 Regular Session of the Legislature seeks to replace the Board of Commissioners, appointed by the City Council, with a Board of Commissioners for the Park appointed by the Governor, and transfers administrative jurisdiction over the Park to the Department of Culture, Recreation and Tourism of the State. Furthermore, the statute provides that the City shall pay up to $700,000.00 to the Park, and all other appropriations and funds designated for the Park are to continue in effect.
The appellees filed exceptions to the suit, including an exception of improper venue. This exception was granted by the district court and, upon application to this Court, the district court's holding was reversed.
Upon remand to the district court, appellants added the State of Louisiana as a defendant, and the court granted a temporary restraining order enjoining the implementation *284 of Act 352. The District Court heard argument on September 8, 1982, on the remaining exceptions, all of which were denied. At this time, the temporary restraining order was extended for an additional 10 days, or until a hearing on the preliminary injunction, or upon further order of the court.
A hearing was held on the preliminary injunction on September 16, 1982. Appellant's request was denied. The district court held that the Act was constitutional because the State of Louisiana owns the Park. It held that the law was not a local or special law because it merely sought to verify the State's ownership of the property. That portion of the statute that provided that the City could expend up to $700,000.00 for the Park was held to be unconstitutional in that it was a local or special law that had not been published pursuant to Article 3, Section 13 of the Louisiana Constitution of 1974. The Court held that severance of this section from the Act did not affect the constitutionality of the statute. Appellants then moved for a suspensive appeal and also requested that this court stay implementation of the Act pending the appeal. This court granted the request for a stay, and the appellants were granted an appeal.
That portion of property forming the major part of the Park as it is known today was a tract of land once known as Foucher Plantation that was purchased on August 15, 1871 for $800,000.00. This purchase was in the name of The Board of Commissioners of The New Orleans Park, an agency that was created by the Louisiana Legislature by Act 84 of 1870. Act 87 of the 1877 Extra Session of the Louisiana Legislature abolished the Commission that had been originally set up and transferred powers to the City Council of New Orleans. In 1896, Act 130 of the Louisiana Legislature transferred the administration of the Park from the City Council to The Audubon Park Association. The Association operated the Park until Act 191 of 1914. Act 191 created a Commission of twenty-four members appointed by the Mayor of the City of New Orleans subject to the approval of the City Council. This Commission was known as The Audubon Park Commission. In 1981, the Legislature passed Act 756 that allowed The Audubon Park Commission to contract with a non-profit Louisiana corporation for the operation, care, control and management of the Park. In 1982, Act 352, at issue in the instant case, was passed.
Upon our review of the record in the instant appeal, we find that the trial court carefully examined the pleadings and memoranda submitted by the parties. The trial court in its Reasons for Judgment was of the opinion that the State of Louisiana was the record owner of the land upon which Audubon Park and its other facilities have been constructed.
We agree with the trial court and find the case of City of New Orleans and The Audubon Park Commission v. Board of Commissioners of the Port of New Orleans, 148 So.2d 782 (La.App. 4th Cir.1962) is largely controlling in this matter. The decision clearly established that the State of Louisiana is the record owner of the property. Judge Julian Samuel, writing for this court, analyzed the question of ownership in his opinion. He examined the initial enabling Act, noting the purposes and powers accorded each responsible party charged with the duty to acquire, in the name of the State, the specified recreational property. The court then went on to analyze the effect of each subsequent amendment and succeeding Act up to the time of the opinion in 1963. At no point in time, in the analysis of any of these Acts of the Legislature, did title to the property pass from the State of Louisiana to the City of New Orleans. All that was conferred upon the City was the privilege of appointing the Audubon Park Commissioners, first by the City Council and later by the Mayor of the City of New Orleans with the advise and consent of the City Council. The court concluded:

We are of the opinion that the above recited legislative acts do nothing more than designate successive agencies to administer, manage and control the park property which belonged, and belongs, to *285 the state. Although title to the property was originally taken in the name of the legislative corporation which had authority to manage and control the park, it is quite clear that the State, and not the corporation, owned the property, and this is also true in connection with the later designations of other agencies. None of the legislative acts divests the state of its original ownership nor has the defendant called to our attention any other act or action by the state which could be considered such a divestiture. None of the agencies owns or has owned the property; that ownership has remained in the state. As the court observed in the case of Saucier v. City of New Orleans, 119 La. 179, 187, 43 So. 999, 1002:
`That the state must administer its property through some agent, that it may administer such of its property as lies within a particular municipality through such municipality, and that the investiture of a municipality with control of state property, for purposes of administration, is neither the loaning, pledging, nor granting of anything, are propositions which do not admit of discussion.' (Emphasis supplied)
The trial court adopted the holding of the Board of Commissioners, supra.
While we are not bound by the common law doctrine of "stare decisis," we do recognize instead, in Louisiana, the doctrine of "jurisprudence constante." State v. Placid Oil Co. et al., 274 So.2d 402 (La.App. 1st Cir.1972); Johnson v. St. Paul Mercury Ins. Co., 256 La. 289, 236 So.2d 216, 218 (La.1970). As stated in Johnson:
Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government. Certainty is a supreme value in the civil law system to which we are heirs. Merryman, The Civil Law Tradition 50 (1969). In Louisiana, courts are not bound by the doctrine of stare decisis, but there is a recognition in this State of the doctrine of jurisprudence constante. Unlike stare decisis, this latter doctrine does not contemplate adherence to a principle of law announced and applied on a single occasion in the past.
However, when, by repeated decisions in a long line of cases, a rule of law has been accepted and applied by the courts, these adjudications assume the dignity of jurisprudence constante; and the rule of law upon which they are based is entitled to great weight in subsequent decisions. Keller v. Haas, 209 La. 343, 24 So.2d 610 (1946); Gravier v. Gravier, 200 La. 775, 8 So.2d 697 (1942); Miami Corp. v. State, 186 La. 784, 173 So. 315 (1937); Rubin and Ponder, The Ostrich and the Arbitrator: The Use of Precedent in Arbitration of Labor-Management Disputes, 13 La.L. Rev. 208 (1953).
Thus, while this court has the power to modify and overrule its former decisions, it does not do so unless it is clearly demonstrated that error has occurred and hardship and injustice will attend a continuation of the rule of law. Gravier v. Gravier, supra.

We do not find it necessary to overrule the trial court. There has been no demonstration that any error has occurred or will arise upon our following of this prior rule of law as in the instant case and that of City of New Orleans and The Audubon Park Commission v. Board of Commissioners of the Port of New Orleans, supra. We, therefore, affirm the ruling of the trial court. Act 352 of 1982 is not unconstitutional.
Since we have found, as the trial court did, that the State of Louisiana is the owner of Audubon Park, it therefore follows that the State has every right to administer its property in whatever manner it determines to be in the best interest of the State.
The City also argues that Act 352 is a local or special law requiring publication, and because no publication was made, the law is unconstitutional.
Article 3, Section 13 of the 1974 Louisiana Constitution requires that:
"[n]o local or special law shall be enacted unless notice of the intent to introduce a *286 bill to enact such a law has been published on two separate days, without cost to the State, in the official journal of the locality where the matter to be effected is situated. The last day of publication shall be at least 30 days prior to the introduction of the bill. The notice shall state the substance of the contemplative law, and every such bill shall recite that notice has been given."
No publication of Act 352 took place, although previous legislation affecting Audubon Park had been published.
The Louisiana Supreme Court has held that a law is not local or special simply because its enforcement may be restricted to a particular locality, or simply because the conditions under which it operates do not prevail in every locality. Davenport v. Hardy, 349 So.2d 858, 863 (La.1977) and cases cited therein. In Davenport v. Hardy, supra, a statute which related to Court Clerks and Constables in Orleans Parish was attacked on the ground that it represented a local or special law. This Court held that although the Constables of these courts were elected by voters from a limited area, they served the community as a whole and not a certain number of persons within a class. It further held that the Act did not give private advantage for the benefit of persons within a specific locality, but affected all persons who might have contact with that court.
Insofar as Act 352 changes the composition of the Board of Commissioners, it is not a local or special law. But see discussion, infra, re appropriations. It is reasonable to assume that the Park will affect not only the people in Orleans Parish, but a large number of other people from outside of the area who may also have contact with the Park. See also State v. Dalon, 35 La.Ann. 1141 (1883).
Furthermore, the Park is owned by the State. One of the fundamental incidents of ownership is the right to administer property. Administration can be delegated to whomever the owner chooses, be it the City Council, a State Board, or an independent agency. We do not decide, however, whether the State has an unfettered right to pass legislation changing the use of State owned property without publication.
The fact that the State has complied with the notice requirements concerning Audubon Park in the past does not make the statutes themselves local or special. See Knapp v. Jefferson-Plaquemines Drainage District, 224 La. 105, 68 So.2d 774 (La.1953).
Although it is clear that the State owns that part of Audubon Park which was once known as Foucher Plantation, there are three additional strips of land that the City claims it acquired subsequent to the original grant.
City Council Ordinance No. 11,727 C.S. of January 9, 1896, authorized the Mayor of the City of New Orleans to accept the first tract of land. Furthermore, the City purchased the second tract in 1904, pursuant to the City Council Ordinance No. 2256 C.S. of February 12, 1904. These parcels of land, clearly are City property. The fact that the parcels of land obtained by the City in 1896 and 1904 are not large makes no difference. We know of no law that allows us to discriminate between large and small parcels of land in this case. The overriding concern of all parties should be the best interest of the public. The decision by the City as to future administration of these small tracts of land should be made in light of this concern.
The City is also claiming a third tract that was purchased from the Texas and Pacific Railway Company for $125,000.00 in 1948, pursuant to City Council Ordinance No. 17,373 of July 15, 1948. That City Council Ordinance authorizes the Audubon Park Commission, not the City, to purchase from the vendee, that tract of land for $125,000.00. The Act of Sale indicates that the purchaser was The Audubon Park Natatorium, Inc., not the City of New Orleans. The City has failed to prove an ownership interest in this parcel of land.
The City argues that Section 3(E)(2) of Act 352 is unconstitutional on the ground that it is violation of the Home Rule Charter provisions of the Louisiana Constitution.
*287 The concluding sentence of Section 3(E)(2) provides:
... In like manner, all other dedications and allocations of revenues and sources of revenues heretofore made, which are constitutional under the Louisiana Constitution of 1974, shall continue, until otherwise hereafter provided by the constitution in the same manner, to the same extent, and for the same purposes as were provided prior to the enactment of this Act.
This requirement or mandate that the City of New Orleans is to spend its own funds for the benefit of the Park would be wholly inconsistent with the Home Rule Charter of the City of New Orleans as provided for by Art. VI of the Louisiana Constitution.
The trial court below declared unconstitutional Section 2 [(Section 1766(A); La.R.S. 56:1766(A))] of Act 352 of 1982, requiring the City of New Orleans "to appropriate monies for the `preservation, improvement and beautification of the Park and its facilities....'" This ruling by the court was premised on its conclusion that the Section was "local or special" in nature and required notice and publication, as required by statute, to be effective and failing that, it was held unconstitutional. We lack jurisdiction to review the constitutionality of this provision as provided by Article V Section 5(D)(1) and Section 10(A)(1) of the Louisiana Constitution of 1974, as amended. Gilbert v. Catahoula Parish Police Jury, 404 So.2d 291 (La.App. 3d Cir. 1981) affirmed 407 So.2d 1228; Derouen v. Kolb, 389 So.2d 761 (La.App. 3d Cir.1980) transferred to 397 So.2d 791 (La.1981); In Re Ingram, 82 So.2d 788 (La.App. 1st Cir. 1955); Gaylord Container Corp. v. Stilley, 79 So.2d 109 (La.App. 1st Cir.1955).
Nevertheless, the reasoning which the trial court employed in declaring Section 1766(A) of the Act unconstitutional is applicable to the above quoted portion of Section 3(E)(2) of Act 352. In addition to being a violation of the Home Rule Charter, this is clearly a local or special law, as discussed supra, and because it was not published, is unconstitutional. The City contends that the Act is inseverable. We disagree. The unconstitutionality of this sentence does not affect the constitutionality of the remaining provisions of the statute including the balance of Section 3(E)(2).
It is important to note, however, that this Act does not impair the rights of the bondholders, or the duties of the City as issuer of the bonds. Act 352, Section 3(E)(1) and (2) (after deletion of the concluding sentence as discussed, supra.) states:
E. (1) The legislature hereby specifically states that this Act is in no way and to no extent intended to nor shall it be construed in any manner which will impair the contractual or other obligations of the abolished commission or of the state of Louisiana. It is hereby specifically provided that all obligations of the abolished commission, hereafter shall be deemed to be the obligations of the new commission to the same extent as if originally made by them. In like manner, and in order to prevent any violation of the provisions, terms, or conditions of any gift, donation, deed, will, trust, or other instrument or disposition by which property of any kind has been vested in the abolished commission, or diversion from the purposes for which such property was thus vested in any such commission, it is hereby specifically provided that each such instrument or disposition hereafter shall be deemed to have been vested in the new commission in the same manner and to the same extent as if originally so done.
(2) The new commission shall be the successor in every way to the abolished commission, including all of the obligations and debts thereof. All funds heretofore dedicated by or under authority of the constitution and laws of this state or any of its subdivisions to the payment of any bonds issued for construction or improvements for any facility under the control of the commission, including but not limited to Act No. 55 of the 1979 Regular Session, shall continue to be collected and dedicated to the payment of those bonds, unless under the constitution and laws such bonds are now being paid *288 out of moneys in the Bond Security and Redemption Fund in the state treasury.....
It is clear that this statutory language was employed by the Legislature to protect the bondholders. The wording of the Act was in no way meant to affect the rights of the bondholders. Additionally, there have been no impairments of this obligation, thus far. The trial court below, believed that any issues raised were premature in the absence of such impairment. We agree.
The stay granted by this Court on September 17, 1982 is continued until 5 P.M., Thursday, October 14, 1982 during which time the appellants may take any further legal action they desire.
For the foregoing reasons, the decision of the trial court is AFFIRMED in part and REVERSED to the extent that the concluding Section 3(E)(2) is declared unconstitutional.
AFFIRMED IN PART.
REVERSED IN PART.