360 So.2d 624 (1978)
STATE of Louisiana Through the DEPARTMENT OF HIGHWAYS
v.
CITY OF NEW ORLEANS et al.
No. 9133.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 1978.
Rehearing Denied July 26, 1978.
*625 William W. Irwin, Jr., Baton Rouge, Jesse S. Guillot, Louisiana Dept. of Highways, New Orleans, William Guste, Jr., Atty. Gen., State of Louisiana, Louis M. Jones, Asst. Atty. Gen., State of Louisiana, for plaintiff-appellee.
Blake G. Arata, City Atty., Lee R. Miller, Jr., Asst. City Atty., for City of New Orleans, defendant-appellant.
Leonard B. Levy, New Orleans, for The Hibernia National Bank in New Orleans, Trustee, intervenor and City of New Orleans, by and through New Orleans Union Passenger Terminal Committee, defendant appellant.
Harry McCall, Jr., New Orleans, for City of New Orleans, by and through New Orleans Union Passenger Terminal Committee, defendant-appellant.
Before REDMANN, STOULIG and SCHOTT, JJ.
STOULIG, Judge.
This is an appeal by the City of New Orleans (City), the City of New Orleans by and through the New Orleans Union Passenger Terminal Committee (Committee) and the Hibernia National Bank in New Orleans (Hibernia)[1] from a judgment rejecting the City's claim for compensation for a large segment of property expropriated[2] by the Highway Department of the State of Louisiana to construct the Carrollton-Airline Interchange.
As background a brief history of the past ownership and physical development of the site for which the City claims compensation is pertinent. Originally this ground formed part of the New Basin Canal and shell roads that ran along each side of the north-south waterway that connected Lake Pontchartrain with the inner city. The State owned this strip, which measured 300 feet wide.
In 1947 the Department of Public Works of the State of Louisiana transferred to the City of New Orleans the New Basin Canal strip for a consideration of $1.00 to enable the City to contract for railroad service. We quote that part of the agreement transferring the property which states the City's purpose and the State's intent:
"Whereas, City, acting pursuant to authority granted to it by Act No. 385 of 1938 adopted as an amendment to the Constitution of Louisiana for 1921 as Section 31.3 of Article XIV has entered into a contract with certain railroads presently entering the City of N.O., to acquire, construct, maintain and operate a Union Railroad Passenger Terminal facility in the City of N.O. on and adjacent to portions of the property of Dept. known and designated as the property of the New Basin Canal and Shell Road * * *." (Emphasis added.)
and
"WHEREAS, in determining the cash consideration for the said portions of the property of DEPT. herein stipulated to be paid, the parties recognize the fact the said Union Railroad Passenger Terminal facility and related projects are public improvements which will be of great benefit to the City of N.O. and the State of La., and said cash consideration is, therefore, not to be considered as reflecting the true market value of said property * * *." (Emphasis added.)
Later that year the canal was filled with the State bearing the full expense for that section from So. Claiborne Avenue to the L & A bridge (one of the parcels taken for permanent servitude is in this section); the *626 City and State sharing the expense for the section between the L & A bridge and General Ogden Street; and the City bearing the full expense for the section between General Ogden and the Black Bridge. (The other parcels taken for permanent servitude and for temporary servitude are located in these sections.)
That same year the Pontchartrain Expressway was built on part of the filled canal. In 1948 two tracks were built from the then new railroad terminal along the New Basin site that have been used continuously since that time. The Pontchartrain Expressway became incorporated in the Interstate system in 1957. The original interchange constructed for Carrollton and Airline traffic, adequate at its inception, soon was insufficient to accommodate the increased traffic flow to and from the New Orleans business district.
By 1972, New Orleans officials were urging the director of the Department of Highways to expedite construction of a redesigned interchange to alleviate the problem. We quote a portion of the letter of Blaise M. Carriere, director of the City of New Orleans Department of Streets, to W. T. Taylor, Jr., director of the Highway Department, State of Louisiana, dated June 28, 1972:

"The fact that the proposed structure can be constructed almost totally within the existing right-of-way with the exception of the need for securing a small area of industrial property and a bare minimum of property along the existing Pontchartrain Boulevard service road is indeed significant. It should be pointed out that only one foot of property along Pontchartrain Boulevard is required and that this area is primarily being used as a roadside ditch at present. Pontchartrain Boulevard in this area is to be reconstructed as a curb and gutter section with subsurface drainage.
"The need for this improvement is readily apparent in that the now existing Carrollton-Airline Interchange was originally designed as part of a major City undertaking known as the Pontchartrain Expressway. In 1957 with the beginning of the Interstate Highway Program the Pontchartrain Expressway was incorporated into the interstate system. The basic design standards although satisfactory at that time are not sufficient to meet the demands of 1972. The interchange structure does not at present provide capacities consistent with the main approach roadways. The proposed structure will provide the needed compatibility between approach roadways and interchange.
"With the completion of the Pontchartrain Expressway-Tulane Avenue link of the Interstate 10 system, New Orleans will have for the first time a single complete expressway system. Until Interstate 610, the east-west bypass route is completed, the basic I-10 system will be called upon to provide the only unrestricted thru route in New Orleans. It is therefore considered most important that the proposed project be undertaken as soon as possible.
"The Department of Streets therefore recommends approval of the design plans and requests that Highway Department and the Federal Highway Administration proceed as quickly as possible toward receipt of bids and undertaking construction." (Emphasis added.)
At a cost in excess of $19 million the interchange was completed. The railroad tracks constructed in 1948 have not been disturbed.
To construct the redesigned interchange it was necessary for the State to take 9306.9 square feet outside the 300-foot-wide Basin Canal strip owned by the City of New Orleans. Conceding that this property is private property that the City had acquired for the L & A Railway that had never been dedicated to public use, the State agreed the City is entitled to $4.00 per square foot. This value is undisputed. Accordingly the trial court awarded the City of New Orleans $37,227.60 less a credit of $25.00 for the amount it deposited in the registry of court when this expropriation suit was filed.
*627 Before considering the merits of this appeal, we note that two of the appellants, the City of New Orleans by and through the New Orleans Union Passenger Terminal Committee and the Hibernia National Bank in New Orleans, trustee, are not proper parties in that neither has a right of action in this expropriation proceeding.
The status of the Committee with respect to the property at issue has been litigated previously. In Olympia Roofing Company v. City of New Orleans, 234 So.2d 273 (La. App. 4th Cir. 1970), this court held the Committee was not the owner of the property utilized to operate rail facilities in and out of New Orleans and therefore had no authority to sell it. We concluded that the Committee was empowered to supervise or control the acquisition, construction, maintenance and operation of the facility. Therefore, it has no standing to seek damages for expropriation. The proper party is the owner the City of New Orleans.
Likewise the Hibernia National Bank in New Orleans intervened in its capacity as trustee of the 1948 bond issue indebtedness. The bank asserts the mortgage given to secure repayment of the $15 million indebtedness includes the property in the New Basin Canal strip that the State expropriated. Without deciding what effect, if any, the mortgage may be given on the particular tract at issue, we note the improvements constructed thereon do not jeopardize the security the land represents, rather the value is enhanced. However in view of the fact we have not increased the purely nominal amount of compensation awarded by the trial court, no need exists for this court to pass upon the right of the intervenortrustee.
As to the substantive issue, the City rests its claim on those sections of the state and federal constitutions guaranteeing that no person shall be deprived of private property without due process of law and payment of just and adequate compensation for the land taken. (LSA-Const.1921, Art. 1, § 2 and U.S.Const. Amend. 5.)
The fallacy in appellant's position is that the property has been dedicated for public use and is therefore not private property. C.C. arts. 453, 454 and 458 define some aspects of public ownership:
"Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are navigable rivers, seaports, roadsteads and harbors, highways and the beds of rivers, as long as the same are covered with water.
"Hence it follows that every man has a right freely to fish in the rivers, ports, roadsteads, and harbors." C.C. art. 453.
"Things which are for the common use of a city or other place, as streets and public squares, are likewise public things." C.C. art. 454.
"Things which belong in common to the inhabitants of cities and other places, are of two kinds:
"Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, and quays.
"And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues." C.C. art. 458.
The Basin Canal strip has always been public land. In the deed of donation by the State to the City it was recognized that " * * * Union Passenger Terminal facility and related projects are public improvements which will be of great benefit to the City * * *." (Emphasis added.) The function of the area remains unchanged insofar as public usage is concerned, namely for highway and rail transportation. The $19 million interchange constructed at the City's request simply facilitates vehicular traffic movement without disturbing the rails crossing the property and they are still in use.
Under our jurisprudence, this is property of the public domain. In Anderson v. Thomas, 166 La. 512, 117 So. 573 (La.1928), *628 the Supreme Court described two types of public ownership, namely, public property within the public domain and public property in the private domain. The former is accessible to all citizens, while the latter may be used by certain groups of the public only. Anderson points out:
"The Civil Code draws a distinction between public things, the property of which is vested in the state, but the use of which is common to all the inhabitants thereof, `and even strangers,' such as the seashore, river beds, highways, streets, and public parks, and public property, which is not for the common use of the inhabitants, but may be employed for their benefit, such as, for instance, the public offices, police and fire stations, markets, schoolhouses, etc. R.C.C. 453, 454, 458." 117 So. at 579.
The significance of the site in question being characterized as property within the public domain is that the governing authority may change and modify the facilities or improvements constructed thereon for public use as long as the primary purpose for which it is dedicated is unaffected. See Landry v. Council of Parish of East Baton Rouge, 220 So.2d 795 (La.App. 1st Cir. 1969). We find the public purpose for which this land has been dedicated has not been altered.
Of course the City rests its claim on the due process guarantees to private property owners. Because this is public property, not private, their claim falls.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Intervenor Hibernia National Bank is trustee charged with "securing $15,000,000 City of New Orleans Union Passenger Terminal revenue bonds" authorized in 1948 to construct the Union Passenger Terminal and railroad facilities necessary to put it into operation.
[2] Three separate parcels were involved. Permanent servitudes for right-of-way purposes were taken on two and a temporary servitude for construction was taken on the third.