431 So.2d 390 (1983)
The CITY OF NEW ORLEANS, Honorable Ernest N. Morial, Mayor of the City of New Orleans, Gail Broussard, Jerome S. Glazer, Dr. Robert Azar, Stephen Manshel, Peter Coleman, all Commissioners of the Audubon Park Commission and Intervenors, Mitch Ledet, Joe Knecht, Brendolyn McKenna, Phil Baptiste, George Ethel Warren, Edgar Poree, Alice Mayer Katz and Felicia Kahn
v.
Honorable David C. TREEN, Governor of the State of Louisiana, Mrs. Lawrence H. Fox, Secretary of the Department of Culture, Recreation, and Tourism, and the State of Louisiana and Friends of the Zoo, Inc., Mrs. Brooke H. Duncan, Mrs. James H. Wadick III, Mr. Julian B. Feibelman, Jr., Ms. Elizabeth Wisdom, Mrs. George Cary, Jr., Mr. Henry B. Kelleher, Mrs. Lane T. DeBardeleben, Mr. Louis L. Frierson, Mrs. Daniel H. Walsh, Dr. David F. Bradley, Mr. J. Freyhan Odenheimer, and Mrs. Hugh P. Walmsley.
Nos. 82-C-2527, 82-C-2528.
Supreme Court of Louisiana.
April 4, 1983.
Rehearing Denied June 3, 1983.
*391 Henry W. Kinney, III, Warren E. Mouledoux, First Asst. Atty. Gen., Gunther R. Michaelis, Asst. Atty. Gen., Louisiana Dept. of Justice, John J. Hainkel, Jr., New Orleans, David R. Poynter, Baton Rouge, for respondents.
William J. Guste, Jr., Atty. Gen., Louis M. Jones, Maureen J. Feran, Asst. Attys. Gen., for the State.
Salvador Anzelmo, City Atty., Galen S. Brown, Deputy City Atty., Jackson P. McNeely, Thomas W. Milliner, Asst. City Attys., Warren Goldstein, Philip A. Whittmann, Judy Barrasso, Steven Usdin, Stone, Pigman, Whittmann & Hutchinson, Harry B. Kelleher, William R. Forrester, Jr., W.L. West, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for applicants.
MARCUS, Justice.
Plaintiffs (hereinafter called City)[1] filed a petition to enjoin the implementation of Act 352 of the 1982 Regular Session of the Louisiana Legislature and to direct the members of the existing Audubon Park Commission to continue to serve in their present capacities. Made defendants were the Governor, the Secretary of the Department of Culture, Recreation and Tourism, and the State of Louisiana (hereinafter called State).[2] Act 352 abolishes the existing Audubon Park Commission for the City of New Orleans and replaces it with a new Audubon Park Commission as a state agency within the Department of Culture, Recreation and Tourism. The act requires the New Orleans City Council to provide funding for the new commission. The City contends the act violates certain provisions of the Louisiana Constitution.[3]
After a hearing, the trial judge denied the City's application for a preliminary injunction. In his reasons for judgment, the judge found that Audubon Park was owned by the state[4] and, therefore, the state had the right to administer the park in whatever manner it determined to be in the best interest of the state. The judge further found that Act 352 was not a "local or special" law but simply a verification of the state's ownership and a change in the form of management of the property. However, he did hold that one provision of the act, § 1766(A) of Section 2, which requires the city to annually appropriate up to $700,000 for the park was "local and/or special legislation" *392 and therefore unconstitutional as not having been published in accordance with La. Const. art. 3, § 13 (1974). However, he found that this provision was severable and did not affect the constitutionality of the remainder of the act.
The City appealed. Friends of the Zoo, intervenors on the side of defendants, separately appealed assigning as error only that portion of the judgment holding § 1766(A) of Section 2 unconstitutional. The court of appeal affirmed the judgment of the district court insofar as it held that Act 352 was not a local or special law and that Audubon Park was owned by the state and as such the state had the right to administer it. 421 So.2d 282. The court did find that two tracts of land included in the park were owned by the city.[5] The court found that the city failed to prove an ownership interest in a third tract of land. The court further held that it lacked jurisdiction to review the constitutionality of the funding provision (§ 1766(A) of Section 2) under La. Const. art. 5, §§ 5(D)(1) and 10(A)(1) (1974).[6] However, the court found that the trial judge's reasons for holding § 1766(A) unconstitutional were equally applicable to Section 3(E)(2) and held that Section 3(E)(2) was a local or special law to the extent that it required the city to continue "all other dedications and allocations of revenues and sources of revenues" and therefore unconstitutional, not having been published in accordance with La. Const. art. 3, § 13 (1974).[7] However, the court, finding Section 3(E)(2) severable, upheld the constitutionality of the remainder of Act 352 and affirmed the denial of the City's application for injunctive relief. On the City's applications, we granted certiorari to review the correctness of that judgment as well as that portion of the judgment of the district court holding § 1766(A) of Section 2 of Act 352 to be local or special legislation that was unconstitutional but severable.[8]
The record documents a legislative history of Audubon Park. A synopsis of these statutes will afford a better understanding of the issues presented by this litigation. By Act 84 of 1870, amended and reenacted in 1871 by Act 83, the legislature provided for the establishment of a public park "for the City of New Orleans" and placed the park under the exclusive control and management of a board of commissioners[9] appointed by the Governor. The board was charged with all the power and authority possessed by the City Council with respect to public parks and was authorized to "purchase, receive and hold" real estate. The City of New Orleans was mandated to impose and levy an annual tax, the proceeds *393 of which would be turned over to the board of commissioners. On August 15, 1871, the board of commissioners purchased a tract of land, formerly the Foucher plantation, which now comprises the majority of Audubon Park, for the sum of $800,000. Sixty-five thousand dollars was paid in cash, 20 promissory notes of $27,000 each were assumed and 195 bonds in the amount of $1,000 each were executed. The bonds were further secured by a mortgage on land owned by the city known as "City Park." By Act 87 of 1877, the legislature abolished the board of commissioners, repealed the special tax which the city had been required to levy, and transferred all the powers and duties of the commissioners to the City Council of New Orleans. In 1884 by Act 103, the legislature recognized that the city had paid 16 of the 20 promissory notes for the Foucher plantation and authorized the city to extend payment of "her indebtedness" for the unpaid balance. By Act 130 of 1896, the control and management of Audubon Park was given to the Audubon Park Association and the City Council of New Orleans was directed to provide financing for the association out of city funds. In 1896 and 1904, two adjoining tracts were acquired by the city and made a part of Audubon Park.[10] By Act 191 of 1914, the legislature abolished the Audubon Park Association and created the Audubon Park Commission composed of 24 citizens, property taxpayers of the city, appointed by the Mayor with the advice and consent of the City Council. The commission was vested with the control and management of the park. The city was directed to provide funding for the commission out of the proceeds of the sale of bonds.
Act 352 of 1982, at issue herein, abolishes the Audubon Park Commission and creates a new Audubon Park Commission "as a state agency" within the Department of Culture, Recreation and Tourism. The new commission is composed of 24 members. The president of Friends of the Zoo is to be a member of the commission. The remaining 23 members are to be appointed by the Governor, 11 of whom are to be members of Friends of the Zoo. Twelve members of the commission are to be residents of New Orleans and 11 are to be residents from the five surrounding parishes. The City of New Orleans is mandated to provide funding for the commission. Section 1766(A) of Section 2 of the Act provides:
For the preservation, improvement, and beautification of Audubon Park and its facilities, including the zoo, and for providing for expenses incidental thereto and other park expenses, the New Orleans City Council shall appropriate annually to the Audubon Park Commission for operating expenses the sum of not more than seven hundred thousand dollars;...
Section 3(E)(2) provides:
... In like manner, all other dedications and allocations of revenues and sources of revenues heretofore made, which are constitutional under the Louisiana Constitution of 1974, shall continue, until otherwise hereafter provided by the constitution, in the same manner, to the same extent, and for the same purposes as were provided prior to the enactment of this Act.
Ever since control of Audubon Park was given to the City Council of New Orleans in 1877, each legislative act giving control of the park to another agency, with the exception of Act 352, has been published prior to its introduction in accordance with the constitutional requirement for local and special legislation.[11]
At the hearing on the application for a preliminary injunction, Steven Zerangue, Director of the Department of State Land, testified that the Department of Natural Resources did not possess records showing the state to be the owner of Audubon Park. The City submitted financial records in evidence showing that no money was appropriated by the state for Audubon Park until *394 1976.[12] Erroll Williams, Director of the Department of Finance of the City of New Orleans, testified that in comparison, the city has expended $28,506,121 toward the operation of Audubon Park since 1894, not including the city's contribution of the park's utilities. Ron Foreman, Executive Director of the Audubon Park and Zoological Gardens, testified that as the park has become increasingly self-sufficient, the city has contributed a decreasing percentage of the park's expenses[13] but the dollar amount contributed by the city has actually increased. The record contains a profile of zoo visitors compiled in 1982 showing that 40% of all local zoo visitors are from Jefferson Parish, 31% from Orleans Parish, and the remaining 29% from surrounding parishes. Mr. Foreman also testified that no municipality other than New Orleans has ever appropriated funds for the park, nor has any other parish with the exception of Jefferson Parish which in 1982 made a one-time contribution of $12,500 for the zoo's educational program.
The City contends the courts below erred in holding that the state owns Audubon Park, particularly the Foucher tract which comprises the majority of the park, and further contends that even if the state is the owner, Act 352 is a local or special law requiring publication prior to its introduction under La. Const. art. 3, § 13 (1974). The City raises numerous other contentions including that Act 352 is a local or special law that grants an "exclusive privilege" to Friends of the Zoo, a private corporation, in violation of La. Const. art. 3, § 12(A)(7), that the act infringes on the city's Home Rule Charter in violation of La. Const. art. 6, § 6 (1974) and that the funding provisions of Sections 2 and 3 of the act are not severable.
We will first address the issue of whether Act 352 is a local or special law because if it is, it is invalid as notice of intention to introduce the act was not published as required by La. Const. art. 3, § 13. Such a determination will make it unnecessary for us to reach the other contentions raised by the City.
La. Const. art. 3, § 13 provides:
No local or special law shall be enacted unless notice of the intent to introduce a bill to enact such a law has been published on two separate days, without cost to the state, in the official journal of the locality where the matter to be affected is situated. The last day of publication shall be at least thirty days prior to introduction of the bill. The notice shall state the substance of the contemplated law, and every such bill shall recite that notice has been given.
A law is general, not local or special, if it operates equally and uniformly upon all persons brought within the relations and circumstances for which it provides, or operates equally upon all of a designated class founded upon a reasonable and proper classification. Teachers Retirement System of Louisiana v. Vial, 317 So.2d 179 (La.1975). Thus, a law may be a general law even though limited to one locality if it is general in its terms and its coverage can extend to other areas should the requisite criteria exist there as well or if its operation is limited to a locality through the effect of a reasonable classification such as population, size or physical characteristics and not solely through the specific designation of a certain parish or parishes. State v. LaBauve, 359 So.2d 181 (La.1978).
The State contends that Act 352 is a general law because it is limited to Audubon Park, the only piece of park property in the state with a significant zoo, and the funding provisions of the act are limited to New Orleans because they correspond to the benefits that the city receives.
Even if the funding required of New Orleans is proportional to the benefits derived *395 by the city, that does not negate the fact that none of the surrounding parishes which derive substantial benefits from the park and are represented on the commission are required to provide any funds for the park. In other words, New Orleans is the only parish required to provide funds for the operation of the park. Nor does the act make any provision for state funding. In addition, the act permits the state to take control of two pieces of property owned by the city. Thus, Act 352 has an immediate and significant impact only on the people of New Orleans. It does not operate equally and uniformly upon all persons brought within the relations and circumstances for which it provides, that is, upon all persons and parishes deriving benefits from the park and represented on its commission. Moreover, its limitation to New Orleans is not based on a reasonable classification. Therefore, Act 352 is not a general law. Rather, it is a local or special law.
Our conclusion that Act 352 is a local or special law is buttressed by the park's history. Audubon Park is located entirely within the limits of the City of New Orleans and was purchased and has been operated since its inception primarily with funds raised by the city. Since Act 191 of 1914, Audubon Park has been under the control and management of the Audubon Park Commission which is totally local in its composition. While these factors taken alone might be insufficient to make Act 352 a local or special law, when considered with the local funding provisions of the act and its removal of two tracts of city-owned land from control of the city, the local or special character of Act 352 is clear.
The State contends, nonetheless, that art. 9, § 1 of the constitution grants the legislature the power to enact Act 352 of 1982 without the necessity of complying with the publication requirement of La. Const. art. 3, § 13. La. Const. art. 9, § 1 provides:
Natural Resources and Environment; Public Policy
Section 1. The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
We have held that the publication required by La. Const. art. 3, § 13 (1974) is inapplicable, even though a law is local or special, if the constitution elsewhere grants the power to adopt legislation on a particular subject. Civ. Serv. Com'n. of City of New Orleans v. Foti, 349 So.2d 305 (La. 1977). Article 3, § 13 provides an important safeguard against abuse of legislative power. Therefore, local or special laws should not be exempted from its application unless the grant of power elsewhere in the constitution is specific. Article 9, § 1 expresses a broad public policy and grants the legislature the power to implement that policy. We do not consider this grant of power sufficiently specific to authorize the particular legislation at issue (Act 352 of 1982) without compliance with art. 3, § 13.
In sum, we consider Act 352 of 1982 a local or special law not authorized by a special constitutional grant which would exempt it from the publication requirement of La. Const. art. 3, § 13 (1974). Since notice of intention to introduce the act was not published, Act 352 is unconstitutional. The courts below erred in holding otherwise. We must reverse.

DECREE
The judgments of the courts below are reversed. Judgment is rendered in favor of the plaintiffs and against the defendants granting plaintiffs a preliminary injunction as prayed for.
WATSON, J., concurs in the result.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
In my opinion, the Audubon Zoo is no more a mere local facility than the Louisiana Superdome. Since 1976, the State of *396 Louisiana has appropriated substantial sums of money annually for expenditures on the zoo. In fact, in 1982 the state appropriated virtually the same amount as did the city of New Orleans. As the majority opinion notes, well over half of the visitors to the zoo last year were from areas outside Orleans Parish. Moreover, in recent years the park, and especially the zoo, have received statewide and, indeed, national attention. Audubon Park, which contains Audubon Zoo, is a major state facility and not purely a local attraction.
The majority opinion incorrectly classifies Act 352 as a "local or special" law, and strikes it down for failure to meet the constitutional requirements of notice. A law is not local or special, however, simply because it may name a parish included or excluded within its coverage, for geography may be a reasonable basis for classification in legislation. See, Johnson, Work of the Appellate Courts1974-75, Legislative Process, 36 La.L.Rev. 549, 551 (1976). See also, State v. LaBauve, 359 So.2d 181, 183 (La.1978) (A law should not be considered local or special if its operation is so limited solely through the effect of a reasonable general classification, such as population size or physical characteristics.) Because Audubon Park and Zoo is a major facility of state and national importance, legislation affecting it is not local legislation merely because it is located within a single parish. In my opinion, the subject of the act in question is a matter of legitimate state concern rightfully amenable to regulation by the state within its police power. La. Const. 1974, art. VI, § 9. Cf. City of New Orleans, et al v. Louisiana, 426 So.2d 1318 (La.1983). Furthermore, the legislation is not local simply because the City of New Orleans is the only local government required to subsidize the facility's operations. The City of New Orleans derives far more tax revenues generated by the facility than any other local government because of Audubon's presence within its boundaries. The legislation should not be considered local because it limits the operation of its revenue contribution requirement to this local tax district. The classification or limitation is reasonable in view of the greatly disproportionate economic benefit that Orleans receives because of Audubon's location.
Because of the majority opinion's resolution of the single question involving the alleged local nature of the law in question, it pretermits a discussion of the other complex issues raised by this case. I therefore dissent only from the treatment of this issue by the majority and reserve judgment on the other questions presented by the litigants.
NOTES
[1] The City of New Orleans, its Mayor, and certain individual members of the existing Audubon Park Commission. The Board of Liquidation, City Debt, of the City of New Orleans, and Mitch Ledet, et al, separately intervened on the side of the plaintiffs.
[2] Friends of the Zoo, Inc., a non-profit corporation, and certain other individual members of the existing Audubon Park Commission intervened on the side of the defendants.
[3] The effective date of Act 352 was September 1, 1982; however, its implementation has been stayed pending the outcome of these proceedings.
[4] The trial judge did not make separate findings of ownership for the several tracts of land that comprise Audubon Park.
[5] Ord. No. 11,727, Council Series, approved Jan. 9, 1896, authorized the Mayor to accept title to a certain portion of land donated to the City of New Orleans to be annexed and made a part of Audubon Park. Said portion of land measures 28 feet front on Felicia St. by 831 feet in depth and 14 feet in the rear. Ord. No. 2256, New Council Series, approved Feb. 12, 1904, dedicated a certain portion of land purchased by the City of New Orleans as part of Audubon Park. Said portion of land measures 831 feet front on Walnut St., 14 feet front on St. Charles St., and 28 feet front on Felicia St.
[6] Article 5, § 10(A)(1) provides that a court of appeal has appellate jurisdiction of all civil matters except as otherwise provided by the constitution.

Article 5, § 5(D)(1) provides that a case shall be appealable to the supreme court if a law or ordinance has been declared unconstitutional.
[7] The court also found that Section 3(E)(2) infringed upon the city's Home Rule Charter in violation of La. Const. art. 6, § 6 (1974).
[8] In No. 82-C-2527, the City sought review of the judgment of the court of appeal. In No. 82-C-2528, the City sought review of the appeal by Friends of the Zoo, requesting that this court assume jurisdiction of that appeal under La. Const. art. 5, § 5(D)(1). Both applications were granted and were consolidated for oral argument. Subsequently, Friends of the Zoo filed a motion in this court to dismiss and abandon their appeal of the district court's holding that § 1766(A) was unconstitutional. We referred the motion to the merits. Considering that all the constitutional issues concerning Act 352 of 1982 raised by the City should be heard at one time, the motion is denied.
[9] The board of commissioners was named and styled "The Commissioners of the New Orleans Park."
[10] See footnote 5.
[11] La. Const. art. 50[48] (1913); La. Const. art. 4, § 6 (1921); La. Const. art. 3, § 13 (1974).
[12] From 1976 to 1979, inclusive, and in 1981, the state appropriated $50,000 annually for Audubon Park while city expenditures during the same period ranged from $781,478 to $3,167,436 per year. In 1982, appropriations by the state and the city were about equal.
[13] The city now contributes 16% of the park's expenses in addition to providing utilities.