443 So.2d 562 (1983)
The CITY OF NEW ORLEANS, etc., et al.[1]
v.
The STATE of Louisiana, etc., et al.[2]
No. 83-CA-1767.
Supreme Court of Louisiana.
November 28, 1983.
Concurring Opinion January 23, 1984.
Rehearing Denied January 27, 1984.
*563 Salvador Anzelmo, City Atty., Galen Brown, Asst. City Atty., Phillip A. Wittmann, Wayne J. Lee, Judy Y. Barrasso, Steven W. Usdin, Stone, Pigman, Wlather, Wittmann & Hutchinson, New Orleans, for plaintiffs-appellees.
William J. Guste, Jr., Atty. Gen., Louis M. Jones and Maureen J. Feran, Asst. Attys. Gen., for defendants-appellants.
WATSON, Justice.
In this contest between the City of New Orleans and the State of Louisiana over control of Audubon Park, the parties dispute the ownership of the park property and the constitutionality of Act 485 of 1983. Intervenors on behalf of the state include "Friends of the Zoo", a nonprofit group incorporated in 1975 to help the New Orleans Zoo, which is located in Audubon Park.
*564 Plaintiffs, the City of New Orleans, et al, filed suit to enjoin the implementation of Act 485 of 1983, which by its terms, abolishes the Audubon Park Commission for the City of New Orleans with members appointed by the Mayor and creates the Audubon Park Commission as a political subdivision of the state with members appointed by the Governor. The trial court granted the injunction on the ground that the Act was unconstitutional, and the State of Louisiana has appealed.[3]

HISTORY OF AUDUBON PARK
Act 84 of the Extra Session of 1870 was passed "[t]o establish a Public Park for the city of New Orleans and to provide means therefor". A parcel of land on Metairie Road which had been laid out by the City as a public park was denominated "The New Orleans Park" and placed under the exclusive management and control of five commissioners. The Act required the City to levy an additional ten year tax of one-eighth of one percent on all property taxed by the City and remit that money to the commissioners "weekly". The commissioners were authorized to enact park ordinances; purchase and hold property between Metairie Road and Lake Pontchartrain; borrow money; sell corporate bonds or promissory notes as security; mortgage "its real and personal property, as well as the land now belonging to the city of New Orleans, known as the City Park;" and to sue and be sued.
Act 83 of 1871 enlarged the commissioners' powers by allowing them to purchase other real estate within the corporate limits of the City (in addition to that lying between Metairie Road and Lake Pontchartrain). Title to such property would vest "according to its terms." By virtue of this authority, "The Commissioners of the New Orleans Park", a corporate body created by the legislature, purchased for the corporation "and its legal successors and assigns" a portion of the Foucher Plantation lying between St. Charles Avenue and the Mississippi River for $800,000.[4] This acquisition, on August 15, 1871, comprises the major portion of what is now Audubon Park.[5] For part of the price, the commissioners issued bonds secured by a mortgage on the City Park property which had been acquired by the City of New Orleans from the succession of John McDonough in 1852.
By Act 87 of 1877, the legislature abolished the offices of the commissioners and the special tax for the parks. All the powers and duties formerly conferred on the "Park Commissioners" were transferred to the City Council of New Orleans. Among the powers transferred to the City was the right to hold real estate for park purposes. Among the duties transferred was the obligation of paying the balance of the Foucher Plantation debt. As the legal successor of the Commissioners of the New Orleans Park, the City acquired title to the Foucher Plantation property.
On July 7, 1881, by Ordinance No. 7195, the City Council and Mayor of New Orleans *565 created a board of commissioners for the Upper City Park [now Audubon Park] to undertake the management and supervision of the park. Financing was to be through private contributions and municipal funds. The Mayor was designated a permanent member of the board of park commissioners.
Subsequently, Act 103 of 1884 authorized the City to renew and extend payment of "her indebtedness" for the unpaid balance of the price paid for the Foucher Plantation property. Part of the price was the assumption of twenty-seven notes of twenty thousand dollars each. All but four of the notes had been paid. The City was authorized to issue certificates of indebtedness and levy a tax to retire the certificates, thereby avoiding a seizure and sale of the property. The Act recites that the $108,000 balance of the purchase price is "due by said city for said park."
City Ordinance No. 1806, adopted May 31, 1886, created a "Board of Commissioners... of the Upper City Park" with jurisdiction over the park and neutral ground of St. Charles Avenue. Of the twenty-four members, three were permanent: the Mayor; the Commissioner of Police and Public Buildings; and the Commissioner of Public Works. The other members of the board were to be appointed by the Mayor.
Audubon Park received its name from an 1886 City ordinance which changed the name of the "Upper City Park" to Audubon in honor of John James Audubon.
The first legislative mention of Audubon Park by name appears in Act 130 of 1896 which places the management and control of City Park and Audubon Park with separate corporations, The New Orleans City Park Improvement Association and the Audubon Park Association. Under this statute, the parks cannot be held liable for obligations contracted by the associations. The City of New Orleans was ordered to provide funding for the park associations in its budget. Both parks were treated identically. The Act notes that the Audubon Park Association had previously been incorporated on June 20, 1894.
Ordinance number 11727, enacted January 9, 1896, directed the Mayor to accept title to square number "60", bounded by Felicia Street, Walnut Street, St. Charles Avenue and Audubon Park, which had been donated to the City. The property measured twenty-eight feet front on Felicia Street, eight hundred and thirty-one feet in depth, and fourteen feet in the rear. Ordinance number 2256, enacted February 12, 1904, dedicates the same property to public use as an addition to Audubon Park.[6]
Act 191 of 1914 created an Audubon Park Commission for the City of New Orleans and entrusted it with the management and control of Audubon Park. The Commission was composed of twenty-four citizens, property taxpayers of the City of New Orleans, each appointed by the Mayor with the advice and consent of the Council. Upon the request of the Commission, the City was authorized, empowered and directed to issue bonds in an amount not exceeding $100,000 for the maintenance and improvement of the park. These "Audubon Park Bonds of the City of New Orleans" were to be retired from appropriations in the City's budget. "Like other city bonds," they were "exempt from all taxation."
After approval by the voters of New Orleans, Act 351 of 1948 authorized incorporation of the City of New Orleans under a commission form of government. The Mayor, except as otherwise specifically provided by the constitution, the charter or other statutes, was empowered to make all necessary appointments to boards and commissions. The Act stated the intention of transferring to the City:
"[a]ll the powers and duties of government in the city of New Orleans or parish of Orleans and the control of all real public property, and all the powers and duties of boards and commissions other than those provided for by the constitution *566 shall be transferred and vested in the city of New Orleans, ..."
The Audubon Park Commission has never been a constitutional board. This legislation gave the City control of Audubon Park, "real public property," and the powers and duties of the Audubon Park Commission. These powers, functions and duties were retained under Article VI, Section 4, of the Louisiana Constitution of 1974.[7]
On July 15, 1948, the Council and Mayor of the City of New Orleans adopted and approved an ordinance to authorize the Audubon Park Commission to purchase from the Texas & Pacific Railway Company for park purposes a portion of ground in the Sixth District bounded by the Mississippi River, Tchoupitoulas Street, Audubon Park and Henry Clay Avenue, containing approximately 21.41 acres. This is the "Avenger Field" or "Mengel Tract" property.
The home rule charter of the City of New Orleans effective May 1, 1954, refers to some "unattached boards and commissions". The Audubon Park Commission is not specifically mentioned, but the Parkway and Park Commission Board shall "administer, control and manage all parks, except those otherwise provided for by applicable state laws."
In 1958, Act 492 authorized the Audubon Park Commission for the City of New Orleans and the New Orleans City Park Improvement Association to control all activities in the parks under their respective management; to contract with private individuals; and to charge rental and/or activity fees for use of the park property. Both parks were treated interchangeably by the legislature. The legislation did not change the authority granted to the Audubon Park Commission for the City of New Orleans by Act 191 of 1914.
Act 150 of 1962 required the "Register of State Lands" to prepare and maintain a listing of all real property owned by or under the control of the state of Louisiana and its boards, commissions, departments and agencies. Audubon Park has never been included in this listing as property of the state or property under the control of a state commission.
Act 305 of 1978 created the New Orleans Exhibition Hall Authority, "a body politic and corporate and political subdivision of the state of Louisiana". The language of this act is significantly different from those dealing with Audubon Park in that it specifically designates the authority as a political subdivision of the state of Louisiana.
Act 55 of 1979 authorized the City of New Orleans "acting by and through the Audubon Park Commission", to issue negotiable, tax exempt bonds for a zoological garden in Audubon Park. "All bonds shall be issued in the name of the city...." The bonds, payable from the proceeds of a special tax, are to be secured "solely upon the credit of the tax revenues received or to be received by the City".
Act 756 of 1981 allows any park commission in a municipality with a population of over four hundred thousand, which operates a park and maintains a zoo, to contract with nonprofit entities for the operation and management of the park and zoo. The Act states: "Title and ownership of all immovable property shall remain vested in the state of Louisiana." This is the first legislative reference to any state "ownership".
Act 51 of 1982 allows the Sewerage and Water Board of New Orleans to charge the Audubon Park and Zoological Garden for annual consumption in excess of its 1981 usage.
*567 Act 352 of 1982 placed the Audubon Park Commission within the Department of Culture, Recreation and Tourism as a "state agency". The new Audubon Park Commission was to be composed of twenty-four members, twenty-three of whom would be appointed by the governor. The twenty-fourth member would be the president of the Friends of the Zoo.[8]
The Act provided in Section 3A:
"Section 3. A. The Audubon Park Commission for the city of New Orleans created by Act No. 191 of the 1914 Regular Session is hereby abolished. The Audubon Park Commission created in this Act shall be the successor in every way to the Audubon Park Commission for the city of New Orleans created by Act No. 191 of the 1914 Regular Session. The powers, duties, functions, responsibilities, programs, and operations of the abolished Audubon Park Commission for the city of New Orleans as vested by the constitution and laws of the state, including but not limited to Act No. 130 of the 1896 Regular Session, Act No. 191 of the 1914 Regular Session, Act No. 492 of the 1958 Regular Session, and Act No. 55 of the 1979 Regular Session, upon and after the effective date of this Act are transferred to and shall be exercised by and be under the administration and control of the Audubon Park Commission created in this Act."
Act 352 of 1982 was declared unconstitutional as a local law enacted without compliance with the publication requirements of LSA-Const.1974, Art. 3, § 13. City of New Orleans v. Treen, 431 So.2d 390 (La., 1983).
Act 865 of 1982 amends and reenacts Act No. 130 of 1896. It transfers the New Orleans City Park Improvement Association to the state Department of Culture, Recreation and Tourism and requires "that... the New Orleans City Council shall appropriate annually" to that association "not more than three hundred and fifty thousand dollars." No actual fiscal burden was imposed by the legislature on the City in this Act, and the permissive funding provision is constitutional. City of New Orleans v. State, 426 So.2d 1318 (La., 1983).[9]
Act 485 of 1983, in contest here, essentially reenacts Act 352 of 1982. It abolishes the Audubon Park Commission for the City of New Orleans and creates a new Audubon Park Commission as a political subdivision of the state of Louisiana with twenty-four members appointed by the governor.[10] The area defined as park property *568 includes the former Foucher Plantation, and the property known as "Avenger Field", but does not include the square designated by the number "60" bounded by Felicia Street, Walnut Street, St. Charles Avenue and Audubon Park. The new Audubon Park Commission is named "the successor in every way to the Audubon Park Commission for the City of New Orleans created by Act 191 of the 1914 regular session". It also has the "powers, duties, functions, responsibilities, programs and operations ... vested by ... Act No. 130 of the 1896 Regular Session, ..." The Act requires the City to continue payment of the bonded indebtedness incurred on behalf of the park and zoo.[11]

JURISPRUDENCE
State Civil Service Com'n v. Audubon Park Com'n, 99 So.2d 920 (La.App.Orl. 1958) held that the Audubon Park Commission was an independent agency of the City of New Orleans. The court noted that the commission is not expressly referred to in the City's Home Rule Charter but many other boards and commissions are also omitted from express reference.
"`[T]he Audubon Park Commission was first created by private charter, by act before Samuel Flower, Notary Public, on the 20th day of June, 1894, and at that time the charter provided that the Mayor and the Commissioners of Public Works, Police and Public Buildings, would be ex-officio members of the Board of Directors. By Act 191 of 1914, a commission known as the Audubon Park Commission was created and entrusted with the management and control of Audubon Park. Its members are appointed by the Mayor; by and with the consent of the Commission Council; they must be citizens and property taxpayers of New Orleans; and the financing of the operation of the park is provided for out of city funds.
"`It is the opinion of this court that this commission is a municipal commission and that its employees are subject to the City Civil Service and not that of the State.'" 99 So.2d at 924.
The court stated that the state may declare a commission it creates to be an agency of the state, but this intention must be evident in the pertinent legislation.
City of New Orleans v. Board of Commissioners, 148 So.2d 782 (La.App. 4 Cir. 1962) stated that the Audubon Park property has always been owned by the state. At issue was the right of the Board of Commissioners for the Port of New Orleans to a servitude on the river bank of the park property. A writ was refused, 244 La. 204, 151 So.2d 493 (1963) because "the result" was correct.
Audubon Park Commission v. Board of Commissioners, 153 So.2d 574 (La.App. 4 Cir.1963), writ denied 244 La. 1011, 156 So.2d 223, considered the ownership of the "Mengel Tract" which was purchased by the Audubon Park Natatorium, Inc., from the Texas & Pacific Railroad in 1949 for $125,000.[12] The Natatorium's stock was entirely owned by the Audubon Park Commission, *569 and it "functioned primarily as a purchasing agent for the Commission."[13] Since the Natatorium was created to do things not permitted to the Commission as a public corporation, the court concluded that the actions of the Commission were ultra vires, beyond the powers conferred by the legislature. However, the Natatorium was a de facto private corporation, which had validly purchased the Mengel Tract. The Natatorium was not acting on behalf of the state, and the state does not own the Mengel Tract. In dicta, the court states that Audubon Park is a public recreational facility owned by the state.
In State ex rel. Guste v. Audubon Park Commission, 320 So.2d 291 (La.App. 4 Cir. 1975) the court stated:
"There is no question but that APC [Audubon Park Commission] is an agency of the City and not of the State, State Civil Service Commission v. Audubon Park Commission, 99 So.2d 920 (La.App. 4th Cir.1958), but Audubon Park is owned by the State and not by the City. City of New Orleans v. Board of Commissioners, 148 So.2d 782 (La.App. 4th Cir. 1962)." 320 So.2d at 295.
These seemingly contradictory statements were irrelevant to the issue, which was whether the attorney general and the intervenors stated a cause of action in alleging that expansion of the zoo would change the character and nature of the park. After remand, State ex rel. Guste v. Audubon Park Commission, 355 So.2d 984 (La.App. 4 Cir.1978) held that the expansion of the zoo area did not change the nature and character of the park. A writ was denied, 356 So.2d 1002 (La., 1978).
Relying on City of New Orleans v. Board of Commissioners of Port of New Orleans, supra, the court in Upper Audubon Ass'n v. Audubon Park Com'n, 329 So.2d 206 (La.App. 4 Cir.1976) stated in dicta that Audubon Park was state owned. The question in the case was compliance with the public lease law, which applies to municipalities as well as state agencies. LSA-R.S. 41:1211. A writ was denied because the result was correct. 333 So.2d 240 (La., 1976).
City of New Orleans v. Treen, 421 So.2d 282 (La.App. 4 Cir.1982) also relied on City of New Orleans v. Board of Commissioners, supra, to hold that the state of Louisiana is the record owner of the property known as Audubon Park. The issue was pretermitted on appeal because the case was reversed on other grounds. City of New Orleans v. Treen, supra.

ISSUES
In deciding the constitutionality of Act 485 of 1983, the following issues must be considered:
(1) Does the City or the State own Audubon Park?
(2) If the City owns Audubon Park, may the State take the property by legislative act?
Does the City or the State Own the Park?
The basic question, which has never been considered or decided by this court, is the ownership of Audubon Park.
The State does not have a specific theory to support its claim of Park ownership,[14] and relies on various legislative acts and court opinions which have referred to the State as the owner. On the other hand, the City traces its title to the purchase by the Commissioners on August 15, 1871, and the subsequent abolition of the Commission in 1877 with the transfer of its powers and duties, including the right to hold real estate, to the City Council of New Orleans.[15] The property thus acquired has never been sold, donated, or otherwise transferred by the City.
*570 In Act 485 of 1983, the state attempted, by legislative fiat, to make the Audubon Park Commission a political subdivision of the state with authority over the property historically administered under the aegis of the City of New Orleans.
There is no question that the property of City Park, which was "laid out by the City of New Orleans as a public park" after the 1852 donation of the land in the Succession of John McDonough,[16] has always belonged to the City of New Orleans.
The legislature has, in many of its enactments, treated City Park and Audubon Park identically.[17] City Park was donated to the City of New Orleans and the ownership of that park has remained with the City of New Orleans. The state has never registered City Park or Audubon Park as being owned by or under the control of the state or its boards, commissions, departments and agencies. The state has always impliedly recognized the City's ownership.
Act 84 of 1870 specifically recognized that City Park belonged to the City of New Orleans and created commissioners to act on behalf of the City of New Orleans. This is clear from the fact that the commissioners were given the right to mortgage "the land now belonging to the City of New Orleans, known as the City Park". The legislature was merely aiding the City by authorizing financing to benefit the New Orleans Park. Subsequently, Act 83 of 1871 had the same purpose; it enlarged upon the previous authority by extending the area in which land could be acquired for park purposes within the City. Act 83 of 1871, in amending the 1870 Act, specifically provided that the property acquired in the enlarged area by the commission "shall vest title according to its terms." Thus, title to the property vested in the Commissioners of the New Orleans Park, not the state. The City paid for the new park property, which it named Audubon Park, and mortgaged the property it already owned, City Park, to finance the acquisition.
By Act 87 of 1877, which transferred all the powers and duties of the Commissioners of the New Orleans Park to the City Council of New Orleans, its legal successor, the legislature recognized that the City was the owner of Audubon Park. Record title to the park property vested in the City by virtue of that Act. It has been held that a city can acquire title by legislative act. See City of New Orleans v. Carrollton Land Co., 131 La. 1092, 60 So. 695 (1913).[18] Subsequently, in Act 103 of 1884, the legislature authorized the City to complete the financing of its purchase of the Foucher Plantation by issuing certificates of indebtedness and levying a new tax. This Act notes that the indebtedness for the Foucher Plantation is that of the City. In Act 130 of 1896, the Audubon Park Association, which had been incorporated in June of 1894 as an agency of the City, was given the control and management of Audubon Park. The Act recognizes the Association's prior existence, reciting that the Audubon Park Association was incorporated on June 20, 1894.
Act 191 of 1914 continued to recognize that the Audubon Park Commission was an agency of the City. The Act provides that the "Audubon Park Commission for the *571 City of New Orleans, be and it is hereby created..." (emphasis added). Its twenty-four members, property taxpayers of the City of New Orleans, were to be appointed by the mayor of New Orleans with the advice and consent of the council.
As the court pointed out in State Civil Service Com'n v. Audubon Park Com'n, supra, the Audubon Park Association was incorporated as a nonprofit corporation in 1894 and the charter of the association provided that the mayor and the commissioners of public works and police and public buildings of the City of New Orleans were to serve ex officio. The Audubon Park Association was created as an independent agency of the City of New Orleans and given the control and management of Audubon Park by Act 130 of 1896. From its inception, the Audubon Park Association was an agency of the City rather than the state.
As recently as 1979, the legislature recognized that the Audubon Park Commission was an agency of the City. The City was authorized to act "by and through the Audubon Park Commission" in issuing its own municipal bonds.
The state concedes that Avenger Field, the Mengel Tract, was purchased by the Audubon Park Natatorium, Inc. The result of Audubon Park Commission v. Board of Commissioners, supra, is correct; the Mengel Tract, purchased by the Natatorium on behalf of the commission, does not belong to the state of Louisiana. However, the premise stated in that case: "The Commission owes its existence to the legislature," is erroneous.[19] The commission came into existence in 1894, prior to the 1896 legislation which gave it the control and management of Audubon Park.
Although Audubon Park Natatorium, Inc. is the record owner of the Mengel Tract, that corporation is wholly owned by the Audubon Park Commission, an agency of the City. Avenger Field, the Mengel Tract, was not purchased on behalf of the state of Louisiana and does not belong to the state.
Although the legislature passed certain enabling legislation over the years in regard to Audubon Park, the first commissioners acted as agents of the City of New Orleans in purchasing the Foucher property; they were succeeded by the City Council, the Audubon Park Association of 1894, and the Audubon Park Commission of 1914, all exercising control and dominion over the Park on behalf of the City.[20]
The City of New Orleans and not the State owns the property occupied by the Audubon Park and Zoo, as well as the improvements upon that property.
May the State Take the Property?
The state contends that the Audubon Park and Zoo are natural resources of the state and subject to the state's police power under Art. IX, § 1.[21] The state's police power is concerned with providing for the health, safety and welfare of the state as a whole. Audubon Park, although open to the public, is primarily a matter of local concern to the City of New Orleans. City of New Orleans v. Treen, 431 So.2d 390 (La., 1983). While the park contributes to the healthful, scenic and esthetic quality of the environment, the legislature cannot assume its ownership and regulation merely by declaring it a natural resource.
*572 The state contends that the park is public property, which is not protected by the constitutional provision against taking without just compensation. LSA-C.C. art. 450 deals with public things and states:
"Public things are owned by the state or its political subdivisions in their capacity as public persons.
"Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.
"Public things that may belong to political subdivisions of the state are such as streets and public squares."
A park, which is analogous to a public square, may belong to a political subdivision of the state, such as the City of New Orleans. It is, of course, a public thing, owned by the City for the benefit of all persons. See Vol. 2, Louisiana Civil Law Treatise, Property, Second Edition, by Professor A.N. Yiannopoulas.[22]
Article I, § 4, Louisiana Constitution of 1974 deals with the right to property:
"Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of police power."
"Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. * * *"
Paragraph two is not limited to private property. It prohibits the state from taking any property including public property owned by political subdivisions, except upon payment of just compensation. "The remainder of the section deals with expropriation in contrast to the first paragraph's concern with regulation." 35 La.L.Rev. at p. 13. Paragraph two of Section 4 relates to all property, public and private; it lacks the qualifying word private in the first paragraph.[23] A municipality may transfer its park property to the state of Louisiana but only by adoption of an ordinance, consent by the state, and execution of an authentic act. LSA-R.S. 33:4719.[24]
The 1974 Louisiana Constitution does not allow the state to take without payment any public thing belonging to a municipality.[25] On the contrary, the rights of local governmental entities are protected by Article VI, § 6.[26]

*573 CONCLUSION
Since the City of New Orleans owns Audubon Park, Act 485 of 1983, which creates a new Audubon Park Commission as a political subdivision of the state of Louisiana, is an unconstitutional taking of the City's property without just compensation. LSA-Const.1974, Art. I, § 4. The City is entitled to injunctive relief against the irreparable injury which would be caused by the unconstitutional taking of its park property and zoo.
For the foregoing reasons, the judgment of the trial court permanently enjoining implementation of Act 485 of 1983 is affirmed.
AFFIRMED.
DENNIS, J., concurs and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur.
For the reasons given by the majority opinion, I am persuaded that the City of New Orleans owns the Audubon Park property. However, I am not convinced that the statute in question constitutes a taking, much less an unconstitutional taking under Article 1, Section 4 of the Louisiana Constitution of 1974. Nevertheless, I concur in the judgment of the court because the statute is unconstitutional as a violation of the local government article of the state constitution.
The City of New Orleans is a "local governmental subdivision which operates under a home rule charter," and the legislature is prohibited from enacting a "law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions" of its government. Art. 6, § 6, La. Const.1974. The statute in question constitutes this type of law because it interferes with the internal management of local government by superseding the city's power and function inherent in the management of its own immovable property. Moreover, the subject of the statute at issue here is not a matter of statewide concern rightfully amenable to regulation by the state within its police power. Art. 6, § 9. See the remarks of Delegate Casey in the proceedings of the Constitutional Convention of 1973, 55th Day, Vol. XVIII, pp. 21-22. See generally R. Gordon Kean, Jr., Local Government and Home Rule, 21 Loy.L.Rev. 63 (1975). The state by this statute does not attempt to regulate parks or zoos on a uniform statewide basis but to provide for the selection of persons to actually manage a particular park and zoo in one locality. I initially disagreed with this position, see City of New Orleans v. Treen, 431 So.2d 390, 395 (La.1983) (Dennis, J., dissenting), but it is now the established interpretation of the overwhelming majority of this court. Id.
The proposition that the enactment of the statute in question amounts to an expropriation is questionable. The statute does not possess any of the distinctive characteristics of expropriation. It does not alter the ownership or use of property. See M.G. Dakin and M.R. Klein, Eminent Domain in Louisiana § 1, p. 1 (1970); Nichols, Eminent Domain § 1.1; 1.42. It does not involve a determination to pursue a public enterprise utilizing land not then held by the public for the purposes of that enterprise. See Dakin and Klein § 5, p. 6. In essence, it only transfers the power to appoint the commissioners authorized to manage and control Audubon Park from the Mayor of New Orleans to the Governor. For this reason, and because I question the majority's interpretation of the expropriation provisions of Art. 1 § 4 of the 1974 Louisiana Constitution in several respects, I concur only in the result of the court's judgment.
NOTES
[1] Plaintiffs are Honorable Ernest N. Morial, Mayor of the City of New Orleans, and Gail Broussard, Jerome S. Glazer, Dr. Robert Azar, Mrs. Fred Gottesman, Mrs. Norman Newhouse, Stephen Manshel, Althea Bagneris, Members of the Audubon Park Commission, and Wellington A. Arnauld, James A. Wright, Phillip M. Baptiste, Rudolph Barnes, Ernest Colbert, George Ethel Warren, Andrew J. Douglas, Delores P. Francois, Leon R. Fulton, Mitchel Ledet, Irvin Joseph, Stephen Johnson, Nolan A. Marshal, Shirley B. Porter, Llewelyn J. Soniat, Louis Marrero, Sam Corenswet, Leon Irwin III, Stanley Muller, George Reese, Jay Furnari, Felicia Kahn, E. Ralph Lupin, Paul Lewis, Milton Lorning, Luis Zervigon, Dean Allison, Leonard M. King, Jr., John Meade, Herbert Burstein, Jack Parker, and All Citizens and Taxpayers of the City of New Orleans.
[2] The other defendant is the Honorable David C. Treen, Governor of Louisiana. The intervenors are Friends of the Zoo, Inc., Mrs. Brooke H. Duncan, Mrs. James K. Wadick, III, Mr. Julian B. Feibelman, Jr., Ms. Elizabeth Wisdom, Mr. Louis L. Frierson, Mr. George Montgomery, Mr. Harry B. Kelleher, Members of the Audubon Park Commission, Mrs. George R. Cary, Jr., Mrs. Daniel H. Walsh, Mrs. Hughes P. Walmsley, Mrs. Lane T. DeBardeleben, Officers or Former Officers of Friends of the Zoo, Inc., Mrs. Robert E. Kerrigan, Jr., Mrs. Carol Odenheimer Caplan, Dr. Henry E. Braden, III, Mrs. Florette Margolis Neuwirth, Mr. James P. Hayes, Jr., Mrs. Dorothy Marcus, Mr. Rick Weber, Sr., Ms. Kathleen S. Eastman, Citizens and Taxpayers of the City of New Orleans, Mrs. Fred Manhart, Mrs. Barbara Davis, Citizens and Taxpayers of the Parish of Jefferson, and Mrs. John Williamson, a Citizen and Taxpayer of the Parish of St. Charles.
[3] Article V, Section 5(D)(1).
[4] The property description is as follows:

"2259' or 12 arpents and 99' front & width on Public Road, then on upper boundary of said tract or lower line of Greenville 5062'2" from the middle of the Public Road to the middle of St. Charles Ave., then on the lower boundary line of said tract or upper line of Burtheville, 5354'11" from the middle of the Public Road to said middle of St. Charles Ave., with all rights to batture, ways privileges, servitudes, etc.in conformity with a plan or diagram signed by J.A. DeHemecourt the 8th of March, 1870annexed and made part of the inventory of the Estate of Louis F. Foucher. (Marquis de Cerce) Inventory on file in the 2nd Dist. Court. Docket # of said court #33781."
[5] A prominent Louisiana historian says: "A more conventional profit was made by United States Senator West, Pinchback and others when what is now Audubon Park was created in New Orleans.... They proceeded to buy up a tract of land for $600,000 paying $65,000 down, and then sold the land to the city for $800,000...." Taylor, Joe Gray, Louisiana Reconstructed, 1863-1877, Louisiana State University Press, Baton Rouge, 1974, p. 199; also see Haskins, James, Pinckney Benton Stewart Pinchback, Macmillan Publishing Co., Inc., New York, 1973, pp. 85-86.
[6] Exempted from the description of Audubon Park in Act 485 is square number sixty, donated to the City, and the ownership of this strip of land is apparently not in dispute.
[7] LSA-Const.1974, Art. VI, § 4 provides:

"Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions."
[8] Under the terms of Act 352, eleven of the other members must be members of the Friends of the Zoo. Six members shall be selected from a list of fifteen submitted by the mayor and council of New Orleans. Six members shall be chosen from a list of twelve New Orleans residents comprised by the legislators representing New Orleans. Five members shall be residents of Jefferson Parish and shall be appointed from a list submitted by the Jefferson Parish legislators. Two residents of St. Bernard shall be appointed from a list compiled by the legislators of St. Bernard Parish. One member, a resident of Plaquemine Parish, shall be chosen from a list submitted by the Plaquemines legislators. Two residents of St. Charles Parish shall be appointed from a list submitted by the St. Charles legislators, and one resident of St. Tammany Parish shall be chosen from a list compiled by the legislators representing St. Tammany Parish.
[9] The statement at 426 So.2d 1320 that under Act 865 the City must pay $350,000 annually to the City Park Improvement Association is not a precise reflection of the unusual wording of the Act. The parties in that case did not argue the City's possible right to pay more than the maximum.
[10] The Act requires the following composition: Seven residents of New Orleans appointed from a list of fifteen, eight names being submitted by the mayor and seven by the council, and one member being a resident of either the Eighth or Ninth Wards. Six residents of New Orleans appointed from a list compiled by the New Orleans legislators, five residents of Jefferson submitted by the legislators from Jefferson, two residents of St. Bernard appointed from a list submitted by the St. Bernard legislators, one resident of Plaquemine appointed from a list submitted by the Plaquemines legislators, two residents of St. Charles or St. John appointed from a list submitted by the legislators of St. Charles and St. John the Baptist Parishes, one member from St. Tammany Parish appointed from a list submitted by the legislators of St. Tammany Parish. Of the members appointed from New Orleans and Jefferson, at least two shall be residents of the west bank of the Mississippi River, one being a resident of the west bank of Orleans Parish, and one a resident of the west bank of Jefferson Parish.
[11] Act 485 of 1983, in pertinent part, provides:

"All funds heretofore dedicated by or under authority of the constitution and laws of this state or any of its subdivisions to the payment of any bonds issued for construction or improvements for any facility under the control of the commission, including but not limited to Act No. 55 of the 1979 Regular Session, shall continue to be collected and dedicated to the payment of those bonds. In like manner, all other dedications and allocations of revenues and sources of revenues heretofore made, which are constitutional under the Constitution of Louisiana, shall continue, until otherwise hereafter provided by the constitution, in the same manner, to the same extent, and for the same purposes as were provided prior to the enactment of this Part. However nothing herein shall be construed as requiring any local authority to fund the operations of the Audubon Park Commission on an annual basis.
"(3) All rights, duties, obligations, and covenants of the Board of Liquidation, City Debt relating to the abolished commission and with regard to outstanding bonded indebtedness shall remain in effect."
[12] This is the same property as "Avenger Field".
[13] 153 So.2d at 577.
[14] Here the Park is considered as the Foucher Plantation tract; the State makes no claim as to "Square 60" and the Avenger Field-Mengel Tract is considered hereafter.
[15] "Audubon Park is located entirely within the limits of the City of New Orleans and was purchased and has been operated since its inception primarily with funds raised by the city." City of New Orleans v. Treen, 431 So.2d at 395.
[16] Act 84 of 1870.
[17] An argument has been made that Audubon Park has the same status as the New Orleans Exhibition Hall. The difference in the status of the Audubon Park Association and the New Orleans Exhibition Hall Authority is shown in the language creating the latter; Act 305 of 1978 specifically states that the Authority "shall be a body politic and corporate and political subdivision of the state of Louisiana." That language is missing from all the legislative enactments affecting Audubon Park until Act 865 of 1982, the unconstitutional predecessor of Act 485 of 1983.
[18] "The city of New Orleans traces its chain of title to Act No. 71 of 1874, p. 119, which act annexes the city of Carrollton to the city of New Orleans, and transfers all the property of the former to the latter. The city of Carrollton was incorporated by Act No. 277 of 1859, p. 219; and it was the successor of the town of Carrollton which was incorporated by Act No. 91 of 1845, p. 47, as amended by Act No. 247 of 1854, p. 182." 60 So. at 696.
[19] 153 So.2d 576.
[20] According to the testimony of Erroll G. Williams, director of finance of the City of New Orleans, the City spent $26,851,514 on the park between 1894 and 1983. The state's contribution has been relatively small. Funding for the park and the zoo now comes from a variety of sources. However, during the history of the park and zoo, the chief source of capital funding has been the City of New Orleans. Even under Act 485, the City retains its contractual obligation to repay the bonds issued to pay for capital improvements to the Audubon Park and Zoo.
[21] LSA-Const.1974, Art. IX, § 1 provides:

"The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy."
[22] W.I. Irby Professor of Law, Tulane University.
[23] The 1921 Constitution's expropriation provision only referred to "private property".

"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." LSA-Const.1921, Art. I, § 2.
See footnote 24, infra.
[24] LSA-R.S. 33:4719 provides:

"Whenever, in the opinion of the governing authority of any parish or municipality, any real property being administered by such parish or municipality under authority of any general or special law, including buildings, parks, amusement facilities, or any other real property, dedicated to public use, exclusive of streets and sidewalks, could be administered to the greater advantage of the public by the state, or any department or agency thereof, the governing authority of such parish or municipality shall have the power to authorize by ordinance the transfer of the administration of such property to the state of Louisiana, or any department or agency thereof; provided, the state of Louisiana, or the department or agency concerned has manifested its consent to accept the said transfer by appropriate action according to the laws and regulations of the respective agency. Upon the adoption of such ordinance, the governing authority of such parish or municipality, through its duly authorized officer, shall have the power to execute an authentic act transferring the administration of such property, as hereinabove set forth."
[25] State Dept., Etc. v. City of New Orleans, 360 So.2d 624 (La.App. 4 Cir.1978), writ denied 362 So.2d 1121 (La.1978), held that the 1921 Constitution did not prevent the state from taking the City's public property without compensation, because the 1921 Constitution only prohibited the taking of private property.
[26] LSA-Const.1974, Art. VI, § 6 provides:

"The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter."